UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


DONNIE LAPPALE HUGHES,

          Petitioner,

vs.                           Case No. 3:16-cv-664-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

          Respondents.

_____


**ORDER**

## I.  INTRODUCTION

Petitioner Donnie Lappale Hughes, in his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1), challenges a 2010 Duval County conviction for dealing in stolen property (count one) and false verification of ownership on pawnbroker transaction form (count three).  Petitioner raises four grounds in the Petition. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 14) and a Notice of Filing and Serving Exhibits (Doc. 15).[1]  Petitioner filed a Notice of Intent Not to File Reply (Doc. 18).  See Order (Doc. 7).

_____

[1] The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

## II.  CLAIMS OF PETITION

The four claims raised in the Petition are: (1) the trial court erred in instructing the jury that proof of the sale of stolen property below the fair market value, where there was no evidence presented of fair market value, gives rise to an inference the seller knew or should have known the property was stolen, resulting in a due process violation; (2) the ineffective assistance of counsel for failure to call two exculpatory witnesses, (3) the ineffective assistance of counsel by misadvising Petitioner not to testify at trial, and (4) the ineffective assistance of counsel for failure to present a valid defense and misadvising Petitioner to reject the state's plea offer.

Petitioner seeks an evidentiary hearing.  Petition at 1.  It is Petitioner's burden to establish the need for a federal evidentiary hearing, and he has not met the burden.  Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011), cert. denied, 565 U.S. 1120 (2012).  In this regard, a district court is not required to hold an evidentiary hearing if the record refutes the asserted factual allegations or otherwise precludes habeas relief.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  After a comprehensive review of the record before the Court, the Court finds that the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief.  Consequently, this Court is able to "adequately assess

[Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

The Court will address all four grounds, see Long v. United States, 626 F.3d 1167, 1169 (11th Cir. 2010) ("The district court must resolve all claims for relief raised on collateral review, regardless of whether relief is granted or denied.") (citing Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) and Rhode v. United States, 583 F.3d 1289, 1291 (11th Cir. 2009)), but no evidentiary proceedings are required in this Court.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal habeas review of state court judgments[.]" Pittman v. Sec'y, Fla. Dep't of Corr., 871 F.3d 1231, 1243 (11th Cir. 2017). This narrow scope of review under AEDPA provides for habeas relief only if there are extreme malfunctions, certainly not to be used as a means to correct state court errors. Ledford, 818 F.3d at 642 (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

Federal courts may not grant habeas relief:

> on "any claim that was adjudicated on the
> merits in State court proceedings unless the

adjudication of the claim" either "(1)
resulted in a decision that was contrary to,
or involved an unreasonable application of,
clearly established Federal law, as determined
by the Supreme Court of the United States; or
(2) resulted in a decision that was based on
an unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding." 28 U.S.C. § 2254(d). "When
deciding that issue, we review *one decision*:
'the last state-court adjudication on the
merits.'" <u>Wilson v. Warden, Ga. Diagnostic
Prison</u>, 834 F.3d 1227, 1232 (11th Cir. 2016)
(en banc) (emphasis added) (quoting <u>Greene v.
Fisher</u>, 565 U.S. 34, 40, 132 S.Ct. 38, 181
L.Ed.2d 336 (2011)). This narrow evaluation is
highly deferential, for "[a] state court's
determination that a claim lacks merit
precludes federal habeas relief so long as
'fairminded jurists could disagree' on the
correctness of the state court's decision."
<u>Harrington v. Richter</u>, 562 U.S. 86, 101, 131
S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting
<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124
S.Ct. 2140, 158 L.Ed.2d 938 (2004)). We also
must presume that "a determination of a
factual issue made by a State court [is]
correct," and the petitioner "ha[s] the burden
of rebutting the presumption of correctness by
clear and convincing evidence." 28 U.S.C. §
2254(e)(1).

<u>Morrow v. Warden</u>, No. 17-10311, 2018 WL 1474837, at *5 (11th Cir.

Mar. 27, 2018).

The standard of proof is demanding, requiring that a claim be

highly probable. <u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1258 (11th

Cir. 2013), <u>cert</u>. <u>denied</u>, 135 S.Ct. 67 (2014). Also, the trial

court's determination will not be superseded if reasonable minds

might disagree about the factual finding. <u>Brumfield v. Cain</u>, 135

S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of

correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

As noted above in Morrow, in applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[2] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." Pittman, 871 F.3d at 1244 (quoting Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's

_____

[2] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), cert. denied, 138 S.Ct. 925 (2018), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

decision is more likely." <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. <u>Id</u>. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>Marshall</u>, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, the standard is meant to be difficult. <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error), <u>petition for cert. docketed by</u> (U.S. Mar. 9, 2018) (No. 17-8046). This Court recognizes, applying the AEDPA standard, state court decisions must be given the benefit of the doubt. <u>Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1107 (11th Cir. 2012) (quotation and citation omitted), <u>cert</u>. <u>denied</u>, 568 U.S. 1237 (2013). Thus, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." Richter, 562 U.S. at 103.

### IV.  PROCEDURAL HISTORY

A brief procedural history will provide context for the claims.  In an information, Petitioner was charged with dealing in stolen property, burglary of a structure, and false verification of ownership on pawnbroker transaction form.  Ex. A at 14-15.  The state filed a Notice of Intent to Classify Defendant as an Habitual Felony Offender.  Id. at 16.  On July 7, 2010, the trial court conducted a jury trial.  Ex. B.  The jury returned a verdict of guilty as two counts one and three, and not guilty as to count two. Id. at 166-67; Ex. A at 38-40.  Petitioner moved for a new trial, Ex. A at 77-78, and the trial court denied it.  Id. at 80.

On October 6, 2010, the trial court held a sentencing proceeding.  Id. at 116-37.  The court sentenced Petitioner as a habitual felony offender to thirty years in prison on count one, concurrent with a ten-year sentence on count three.  Id. at 134-35. The court entered judgment and sentence on October 6, 2010.  Id. at 83-89.

Petitioner appealed his conviction.  Id. at 106.  Through counsel, Petitioner filed an appeal brief.  Ex. C.  The state filed an answer brief.  Ex. D.  On March 6, 2012, the First District Court of Appeal (1st DCA) affirmed with a written opinion.  Ex. E. The mandate issued on March 22, 2012.  Ex. F.  Petitioner sought discretionary review, Ex. G, but the Supreme Court of Florida

declined to accept jurisdiction and denied the petition for review. Ex. H.

Petitioner filed a Motion for Postconviction Relief (Rule 3.850 motion), pursuant to the mailbox rule, on October 12, 2012. Ex. I. He filed an Amended Motion for Post-Conviction Relief (amended Rule 3.850 motion) on November 20, 2013. Ex. J. After being directed to do so by the trial court, the state filed a Response to Defendant's Amended Motion for Post Conviction Relief addressing ground four of the amended motion (ground eight, as designated by the trial court). Ex. K. See Ex. M at 80. Petitioner replied. Ex. L.

The trial court denied the Rule 3.850 motion and amended Rule 3.850 motion in its Order Denying Defendant's Motion for Postconviction Relief and Amended Motion for Postconviction Relief. Ex. M. Petitioner moved for rehearing. Ex. N. The trial court denied rehearing. Ex. O. Petitioner appealed. Ex. P. The state filed a notice that it would not file a brief. Ex. Q. The 1st DCA, on February 18, 2016, per curiam affirmed. Ex. R. The mandate issued on March 15, 2016. Ex. S.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on these Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there

- 8 -

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Recently, the Eleventh Circuit, in <u>Reaves v. Sec'y, Fla. Dep't of Corr.</u>, 872 F.3d 1137, 1148 (11th Cir. 2017) (quoting <u>Strickland</u>, 466 U.S. at 687), instructed: a counsel's performance is deficient only if counsel's errors are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." And importantly, with regard to the establishment of prejudice requirement, the Eleventh Circuit provided that the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome. <u>Id</u>. (quoting <u>Strickland</u>, 466 U.S. at 694).

Finally, in order to prevail on a claim of ineffective assistance of counsel, both parts of the <u>Strickland</u> test must be satisfied. <u>Bester v. Warden, Att'y Gen. of the State of Ala.</u>, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)), <u>cert</u>. <u>denied</u>, 137 S.Ct. 819 (2017). However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other prong. <u>Id</u>.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In his first ground, Petitioner claims the trial court erred in instructing the jury that proof of the sale of stolen property below the fair market value, where there was no evidence presented of fair market value, gives rise to an inference the seller knew or

should have known the property was stolen, resulting in a due process violation. Petition at 15. Petitioner contends this issue boils down to a due process violation as the state was allowed to infer guilt but not present evidence to support the inference on essential elements of the crime of dealing in stolen property. Id. In the Response, Respondents assert that the due process claim is unexhausted and procedurally barred. Response at 11, 24-27.

In addressing the question of exhaustion, this Court must ask whether Petitioner's claim was fairly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply

controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 568 U.S. 1104 (2013).

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

The Supreme Court has imparted that a petition for writ of habeas corpus should not be entertained unless the petitioner has

first exhausted his state court remedies.  <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"  <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 558 U.S. 1151 (2010).

Upon review, the record shows Petitioner did not raise the federal due process claim in his appeal brief.  Ex. C.  Thus, he did not fairly present a federal constitutional claim to the state courts.  In this case, it is clear that any future attempts at exhaustion would be futile.

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."  <u>Martinez v. Ryan</u>, 566 U.S. at 10 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)).  If cause is established, a petitioner is required to demonstrate prejudice. In order to demonstrate prejudice, a petitioner must show "that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."  <u>Owen</u>, 568 F.3d at 908.

More particularly, to demonstrate cause, a petitioner must show that some objective factor external to the defense impeded his

effort to properly raise the claim in state court. <u>Wright v.</u>
<u>Hopper</u>, 169 F.3d 695, 703 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934
(1999). Here, Petitioner fails to point to some factor external to
the defense.

Petitioner has failed to show cause, and he does not meet the
prejudice or manifest injustice exceptions. Although a petitioner
may obtain review of the merits of a procedurally barred claim if
he satisfies the actual innocence "gateway" established in <u>Schlup</u>
<u>v. Delo</u>, 513 U.S. 298 (1995), Petitioner has not done so. The
gateway is meant to prevent a constitutional error at trial from
causing a miscarriage of justice and "'the conviction of one who is
actually innocent of the crime.'" <u>Kuenzel v. Comm'r, Ala. Dep't of</u>
<u>Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting
<u>Schlup</u>, 513 U.S. at 324), <u>cert</u>. <u>denied</u>, 569 U.S. 1004 (2013). The
fundamental miscarriage of justice exception is only available in
extraordinary cases upon a showing of "'actual' innocence" rather
than mere "'legal' innocence." <u>Johnson v. Ala.</u>, 256 F.3d 1156,
1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S.
926 (2002). With respect to this unexhausted ground, Petitioner
has failed to identify any fact warranting the application of the
fundamental miscarriage of justice exception.[3]

---

[3] Although the 1st DCA, on direct appeal, found there was no
evidence presented as to the fair market value of the compressor,
it held the giving of the inference instruction did not constitute
fundamental error as the instruction did not omit or erroneously
define an essential element of the offense. Ex. E at 5. Instead,
this instruction merely advised the jury of a permissible inference

In conclusion, the Court finds ground one is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, this ground is due to be denied as procedurally barred.

## B. Ground Two

In ground two, Petitioner raises a claim of ineffective assistance of counsel for failure to call two exculpatory witnesses. Petition at 18. Petitioner exhausted this ground by raising it in ground three of his Rule 3.850 motion and ground one (renumbered as ground five) of the Amended Rule 3.850 motion and appealing the denial of this ground in issue one of his appeal brief. Ex. I; Ex. J; Ex. P.

With respect to this ground, Petitioner claims he told his counsel that his defense was one of true ownership of the pawned air compressor. Petition at 18. In support of this stated defense, he avers he informed his counsel that Pastor Johnson was mistaken in his belief that the red Sears Craftsman air compressor was his own, self-described, black, air compressor. Id. Petitioner said it was "a case of mistaken identity supported by circumstantial evidence of photos of the Petitioner found at the scene." Id.

_____

that it was free to accept or reject. Id.

More specifically, Plaintiff contends his counsel's performance was deficient for failure to call Mrs. Rosetta. Petitioner claims Mrs. Rosetta would have testified that the red air compressor was originally hers, but she had given it to Petitioner in exchange for work performed for her. Id. Additionally, Petitioner asserts counsel's performance was deficient for his failure to call Ms. Earlene Collins. Petitioner alleges Ms. Collins would have testified that she witnessed Petitioner working on Mrs. Rosetta's vehicles with the red air compressor, and Ms. Collins could attest that the compressor had been given to Petitioner. Id. at 19.

"Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995), cert. denied, 516 U.S. 856 (1995). In order to demonstrate ineffectiveness, the decision must be so patently unreasonable that no competent attorney would have chosen that path. Dingle v. Sec'y for the Dep't of Corr. 480 F.3d 1092, 1099 (11th Cir.) (quotation omitted), cert. denied, 552 U.S. 990 (2007). See Rizo v. United States, No. 03-20010-CIV, 2014 WL 7152755, at *5 (S.D. Fla. Dec. 15, 2014), aff'd, 662 F. App'x 901 (11th Cir. 2016) (finding counsel's decision not to call alibi witnesses was not unreasonable, particularly where the alibis were not airtight, avoiding leaving the jury with the conundrum as to whether to focus

more on the proof of the alibi than on whether the state has met its burden of proof).

The trial court, before addressing Petitioner's claim of ineffective assistance of counsel, set forth the two-pronged <u>Strickland</u> standard of review for this claim grounded in the Sixth Amendment. Ex. M at 80-82. The court outlined the particular claim of ineffectiveness:

> In Ground Three, Defendant claims counsel failed to adequately investigate his case. According to Defendant, he requested counsel call two unnamed Defense witnesses to prove he received the air compressor from someone for whom he did car repairs. In Ground Five, Defendant identifies the two exculpatory Defense witnesses: Ms. Rosetta, a friend; and Ms. Earlene Collins, his fiancee at the time of the offense. (Def's Am. Mot. 7.) First, according to Defendant, Mrs. Rosetta would have testified the pawned, red air compressor originally belonged to her, but she gave it to him as a gift. Therefore, the pawned air compressor did not belong to Pastor Johnson, as Pastor Johnson's air compressor was black in color, not red. Second, Defendant avers Ms. Collins would have testified that, for two-and-one-half years prior to the offense, she witnessed Defendant working on cars using the pawned, red air compressor. Defendant contends the outcome of his trial would have been different had these two witnesses testified on his behalf.

Ex. M at 86-87 (accent omitted).

In finding the claim to be without merit, the court opined:

> The Court finds trial counsel exhaustively questioned Pastor Johnson during cross-examination about his identification of the air compressor, and especially about how he forgot the color of it during trial. (Ex. E at 24, 38, 43-45.) Indeed, counsel

> presented Pastor Johnson with his previous
> written statement, within which he wrote his
> air compressor was black in color, but he
> recognized in open court for the jury that the
> pawned air compressor was red. (Ex. E at 46-
> 47.) Thus, the Court finds counsel
> established the very same evidentiary effect
> through his questioning of the victim as
> presentation of these two witnesses would
> have, that is, the pawned air compressor did
> not belong to Pastor Johnson. The Court finds
> the testimony of these two witnesses would not
> have changed the outcome of Defendant's trial
> as required by <u>Strickland</u>. As such, these two
> grounds for relief are denied.

Ex. M at 87.

The 1st DCA per curiam affirmed the trial court's decision. Ex. R. There is a reasonable basis for the state court to deny relief, and this decision must be given deference. The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

As noted by the trial court, counsel chose to exhaustively question Pastor Johnson on cross examination and impeach his testimony with his prior written statement concerning the color of his air compressor. Initially, defense counsel inquired about the color of the air compressor as described to the detective. Ex. B at 46. Pastor Johnson said he told the detective he didn't know if it was black or red. <u>Id</u>. Upon further inquiry, Pastor Johnson said he forgot the color, but when he saw the compressor he knew it. <u>Id</u>.

Defense counsel asked Pastor Johnson to read his prior statement to himself to refresh his recollection. <u>Id</u>. Counsel then inquired:

> Q    And, Mr. Johnson, in this statement you wrote on the 24th shortly after this incident, you wrote down that it was a black air compressor; is that right?
>
> A    That's correct.
>
> Q    You didn't write down that you couldn't remember, right?
>
> A    No.   I didn't write that on the paper.
>
> Q    The only thing you wrote was the color black, right, sir?
>
> A    That's correct.
>
> Q    And that air compressor is red. Would you agree on that?
>
> A    Yes.

<u>Id</u>. at 47.

The record before the Court supports the conclusion that counsel's performance was not deficient.  It shows that on cross examination of Pastor Johnson, defense counsel asked the pastor about the description of the air compressor provided to the detective.  Pastor Johnson conceded he had not written that he did not remember the color, or written it was black or red, but instead described the color of the compressor as black in his statement written shortly after the incident.  Thus, counsel's effective cross examination of Pastor Johnson demonstrated to the jury that

the witness did not describe the compressor as being black and red, or red.  Instead, Pastor Johnson claimed a black air compressor had been taken from church property.

When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in <u>Strickland</u>, 466 U.S. at 689. This Court must consider that counsel is given wide latitude in making tactical decisions, like selecting who to call as witnesses. <u>Id</u>.  Although Mrs. Rosetta or Ms. Collins were not called to testify at trial, defense counsel effectively cross examined Pastor Johnson, which revealed that he claimed he owned a black air compressor, not a red one.  The Court recognizes, "[t]here are countless ways to provide effective assistance in any given case." <u>Id</u>.  The trial court found that counsel "established the very same evidentiary effect" through cross examination of Pastor Johnson as would have been achieved by calling the two suggested witnesses. Ex. M at 87.  Indeed, defense counsel showed through effective cross examination that Pastor Johnson said he owned a black air compressor, not the red, pawned air compressor.  Ex. M at 87.

Counsel's decision to attack the state's case in this manner was not so patently unreasonable that no competent attorney would have chosen that path.  His tactic of using extensive cross examination of Pastor Johnson concerning his claimed ownership of a black air compressor placed the focus of the jury on whether the

state had met its burden of proof.  Indeed, defense counsel argued in closing:

> And the most important thing is the color.  And he [Pastor Johnson] sat right up there and testified that this was a black compressor.  And it was tried to be made that this is a black compressor, even though this big tank here is glowing red.  But that's like saying, you know, if you have a yellow car but the bumpers are black, that it's a black car. It's a red compressor.  It's right there.
>
> So much so that the pawn people even corroborate that.  That's what they wrote on a pawn slip, and this will go back with you. They didn't write black compressor.  Very clear.  Red Compressor.

Ex. B at 130-31.

In denying this ground, not only did the trial court find no deficient performance, the court also found Petitioner was not prejudiced by counsel's performance, concluding "the testimony of these two witnesses would not have changed the outcome of Defendant's trial as required by <u>Strickland</u>."  Ex. M at 87.  In essence, the court found there is not a probability of a different result sufficient to undermine confidence in the outcome of the trial if counsel had called the two witnesses.  <u>Strickland</u>, 466 U.S. at 694.  The 1st DCA affirmed the decision of the trial court. Ex. R.

Again, in order to prevail on his claim of ineffective assistance of counsel, Petitioner has to satisfy both parts of the <u>Strickland</u> test.  <u>Bester</u>, 836 F.3d at 1337.  With respect to this claim, Petitioner failed to do so.

- 20 -

As stated previously, AEDPA deference is warranted. The record shows the 1st DCA affirmed the decision of the trial court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed to do so.

The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground two.

## C. Ground Three

In his third ground, Petitioner seeks habeas relief based on a claim of ineffective assistance of counsel for misadvising Petitioner not to testify at trial. Petition at 20. Petitioner contends counsel's advice not to testify was unreasonable under the circumstances. <u>Id</u>. Petitioner claims he was "constitutionally entitled" to present evidence to support his defense theory that he owned the air compressor and Pastor Johnson misidentified the compressor as being his own compressor. <u>Id</u>.

Petitioner exhausted this ground by raising it in the Amended Rule 3.850 motion as ground four (renumbered as ground eight). Ex. J. The state filed a response to this ground. Ex. K. Petitioner

replied.  Ex. L.  The trial court denied the claim.  Ex. M at 91-93.  Petitioner appealed the denial of this claim, raising it in issue two of his post conviction appeal brief, and the 1st DCA affirmed.  Ex. P; Ex. R.

It is important to note that in the reply brief filed in the trial court, Petitioner conceded the claim that counsel misadvised Petitioner that if he testified the jury would learn the nature of his prior convictions, finding it "conclusively refuted by the record[.]" Ex. L at 75.  Nevertheless, Petitioner still claimed trial counsel's misadvice not to testify prejudiced the defense because it deprived Petitioner of the opportunity to present his defense.

Upon review of the trial record, it is quite apparent that the defense strategy did not include the presentation of evidence.  Ex. B at 102.  In fact, defense counsel announced to the court that no evidence would be presented.  Id.  The record also shows, after the state rested, the following colloquy took place between the court and Petitioner:[4]

> THE COURT:  Mr. Hughes, I need you to come up front for a moment please.
>
> THE DEFENDANT: (Complying.)
>
> THE COURT: Mr. Hughes, as the defendant in a criminal case, you have the right to choose whether or not you want to testify.

---

[4] Of note, the trial court did not place Petitioner under oath.

- 22 -

Most people if they get a subpoena, they got to come -- they got to testify, but since you're the defendant, your Constitutional Right against self-incrimination says that if you want to testify, you can testify. If you don't want to testify, you don't have to.

Mr. Niemczyk [defense counsel] can advise you about what he thinks you ought to do, but he can't make the decision for you. The decision has to be made by you and you alone.

If you choose not to testify, I will instruct the jury that they can't consider that as any admission of guilt on your part, and they can't be influenced by your decision in any way in rendering your verdict.

If you choose to testify, you have to answer the State's questions as well as your lawyer['] questions, and you will be asked how many times you've been convicted of a felony or a crime involving dishonesty.

As long as you and the State agree on what that number is, the jury only hears the number of prior convictions. They don't go into any of [the] charges.

If you and the State cannot agree on a number, then the State's entitled to place into evidence certified copies of any judgments they have against you. If that happens, the jury learns the nature of your prior convictions as well as the number. But as long as you and the State agree on the number, that's all that the jury hears.

Also, if you choose not to testify since you're not a witness, your prior record is irrelevant and doesn't come into trial in any manner. Do you understand all those?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had a chance to discuss all of this with Mr. Niemczyk?

THE DEFENDANT: Yes, sir.

Ex. B at 102-104.

The trial court continued its inquiry:

> THE COURT: Have you made a decision about whether you want to testify or not?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You haven't made a decision?
>
> THE DEFENDANT: I don't want to testify.
>
> THE COURT: You have made a decision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you don't want to testify?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you want Mr. Niemczyk to call any witnesses other than yourself to testify?
>
> MR. NIEMCZYK: We don't have any.
>
> THE DEFENDANT: We don't have any.

Id. at 104.

The Eleventh Circuit discussed the fundamental right of a criminal defendant to testify:

> It is by now abundantly clear that a criminal defendant has a fundamental right to testify on his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). That right "cannot be waived either by the trial court or by defense counsel," and a "criminal defendant cannot be compelled to remain silent by defense counsel." Teague, 953 F.2d at 1532.

<u>Nejad v. Att'y Gen., State of Ga.</u>, 830 F.3d 1280, 1289–90 (11th Cir. 2016).

Based on the trial court's inquiry and Petitioner and his defense counsel's responses, the defense clearly expressed it intention not to call any witnesses. Both Petitioner and defense counsel told the court they did not have any witnesses. Petitioner, in response to the extensive inquiry by the trial court, said he did not want to testify. In fact, he repeatedly stated his position on the matter.

If there was any misadvice on the part of counsel, the trial court cured it by correctly informing Petitioner about his absolute right to testify on his own behalf and the fact that it was Petitioner's decision, and his alone as to whether to testify or not. Importantly, the court reminded Petitioner his attorney was there to provide advice, but ultimately it was Petitioner's sole decision as to whether to take the stand.

The record demonstrates Petitioner is an habitual felony offender. Ex. A at 16. At sentencing, the defense stipulated to seven prior felony convictions. <u>Id</u>. at 120. As previously noted, the court thoroughly explained to Petitioner that the jury would, at a minimum, be apprised of the number of Petitioner's prior felony convictions if he took the stand.

In its order denying post conviction relief, the trial court rejected the claim of ineffective assistance of counsel. Ex. M at 91-93. The court held:

In Ground Eight, Defendant argues counsel was ineffective for misadvising him to not testify at trial on his own behalf. Defendant contends counsel told him if he decided to take the witness stand, the jury would learn about the specific nature of his previous convictions, including prior convictions for Burglary. (Def.'s Am. Mot. 16.) Defendant argues that, had he testified, he would have told the jury the air compressor he pawned belonged to Mrs. Rosetta, but she gave it to him and he sold it. (Def's Am. Mot. 16-17.) As noted *supra*, the Court previously directed the State to respond to this allegation. In its response, the State argues the record refutes Defendant's instant claim for relief and it should be denied. Specifically, the State avers even if counsel advised Defendant as he alleges, the trial court remedied such advice by apprising Defendant of the potential ramifications if he chose to testify on his own behalf. The Court adopts the State's response as to its latter contention and denies Defendant relief.

Ex. M at 91.

The court found Petitioner did not demonstrate prejudice under Strickland due to the fact that the trial court cured any misadvice. Id. at 91-92. Addressing this ground, the trial court assumed *arguendo* Petitioner's allegations were true, but still found Petitioner failed to demonstrate prejudice. Id. at 92-93. In doing so, the court opined, "the evidence presented at trial overwhelmingly demonstrates Defendant's guilt[.]" Id. at 93. In failing to satisfy the prejudice prong of Strickland, Petitioner could not prevail on his claim of ineffective assistance of counsel. See Bester, 836 F.3d at 1337 (finding a petitioner must

satisfy both prongs of the _Strickland_ test in order to prevail on his claim of ineffective assistance of counsel).

If there is any reasonable basis for the court to deny relief, the denial must be given deference. With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision. The state court's ruling is well-supported by the record and by controlling case law, _Strickland_ and its progeny. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. Ex. R. This Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of _Strickland_, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground three.

### D. Ground Four

In his fourth and final ground, Petitioner raises a claim of ineffective assistance of counsel for failure to present a valid defense and misadvising Petitioner to reject the state's plea offer. Petition at 21. Petitioner raised this claim in the state court system in ground three of his Amended Rule 3.850 motion (renumbered as ground seven). Ex. J. Raising this ground as issue four of his post conviction appeal brief, he appealed the trial court's ruling, exhausting his claim in the state courts. Ex. P.

Notably, the trial court, in denying the Rule 3.850 motion, referenced the applicable two-pronged _Strickland_ standard as a preface to addressing Petitioner's claim of ineffective assistance of counsel. Ex. M at 80-82. In a well-reasoned decision, the court rejected this claim finding counsel did not render deficient performance. _Id_. at 90.

First, the court succinctly described Petitioner's contentions:

> In Ground Seven, Defendant argues counsel misadvised him about his chances of prevailing at trial, and because of this misadvice, he rejected a favorable plea offer from the State and proceeded to trial. In support, Defendant contends the State offered him a plea offer of five years of incarceration as a non-HFO, but he rejected this offer upon counsel's "bad advice" about the merits of misidentification defense. (Def.'s Am. Mot. 13.) Defendant further avers he rejected the plea offer upon counsel's belief the Defense would prevail at trial because (1) the State's case was weak, and (2) the victim misstated the stolen air compressor was black and not red, showing Defendant pawned a different, red air compressor, and not the victim's black one. (Def's Am. Mot. 12-13.)

Ex. M at 90.

Thereafter, the court set forth what would be expected to be shown under _Strickland_ to adequately support a claim of this nature:

> the defendant must assert more than merely that counsel advised against accepting a plea, that the defendant took the advice, and that ultimately a greater sentence was imposed. On its face, such an allegation

> identifies no failing on counsel's
> part. Rather, some specific
> deficiency must be alleged: for
> instance, that counsel advised the
> client to reject the plea without
> preparing or knowing the operative
> facts of the case, or that counsel
> neglected to identify the material
> legal issues, or that counsel
> otherwise did not fully perform as a
> lawyer.
>
> <u>Dines v. State</u>, 909 So.2d 521, 523 (Fla. 2d
> DCA 2005).

Ex. M at 90.

Finally, the court rejected the claim of ineffective assistance of trial counsel. <u>Id</u>. The court opined that failure to prevail at trial after a recommendation to reject a plea offer does not mean the pre-trial advice was *per se* misadvice.[5] <u>Id</u>. The court noted, according to Petitioner, defense counsel made his recommendation to proceed to trial, "after carefully assessing the State's case/evidence and the victim's inability to identify the color of his missing air compressor[.]" <u>Id</u>. at 92. As such, the court concluded that even Petitioner's contentions showed counsel's "diligent investigation and knowledge of the case/facts[.]" <u>Id</u>.

Applying the <u>Strickland</u>, standard, the court rejected this claim of ineffectiveness, finding Petitioner failed to meet his burden under <u>Strickland</u>. It is noteworthy that "there is no

---

[5] It is important to recognize that Petitioner prevailed, in part, at trial. The jury found Petitioner not guilty of burglary of a structure, a result supporting the conclusion that counsel diligently investigated the case and prepared for trial, and effectively represented his client at trial. Ex. A at 39, 41.

expectation that competent counsel will be a flawless strategist or tactician[.]" Richter, 562 U.S. at 110. Again, perfection is not the standard. Petitioner has the burden to show his counsel's representation fell below an objective standard of reasonableness. With respect to this ground, Petitioner has failed to meet this burden. He has not shown that his attorney's representation was so filled with serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment.

In denying this ground, the trial court concluded that counsel's performance was not deficient under Strickland, and denied post conviction relief. The 1st DCA affirmed. Ex. R. Its adjudication on the merits is unaccompanied by an explanation. Thus, the Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Notably, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. If he fails to accomplish this task, he cannot prevail on ground four of the Petition.

Upon review, there is a reasonable basis for the state court to deny relief; therefore, the denial must be given deference. In this instance, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. R. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an

unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground four is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[6] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of April, 2018.

_____
BRIAN J. DAVIS
United States District Judge

sa 4/3
c:
Donnie Lappale Hughes
Counsel of Record